## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**DAVID RODRIGUEZ-COTTO,**

    **Plaintiff,**

    **v.**

**CORPORACION DEL FONDO DEL SEGURO DEL ESTADO (CFSE), et al.,**

    **Defendants.**

**CIVIL NO: 16-2434 (PAD)**

## OPINION AND ORDER

Delgado Hernández, District Judge.

Plaintiff David Rodríguez Cotto initiated this action against the Corporation of the State Insurance Fund of Puerto Rico (CFSE by its Spanish acronym) and others,[1] seeking relief for alleged violations of the Due Process Clause and the First Amendment pursuant to 42 U.S.C. § 1983, and under Puerto Rico Law.[2] In essence, he alleges to have been terminated from a career position with the CFSE (1) because of his political affiliation to the New Progressive Party ("NPP"); (2) in retaliation for issuing dissenting opinions as a member of the CFSE Board of Appeals that lambasted personnel transactions executed and approved by defendants, particularly defendant Estrada; and (3) in violation of due process of law. Besides, he posits that after the termination, he unsuccessfully applied for several positions within in the CFSE but was turned

---

[1] Liza M. Estrada Figueroa in her personal capacity and in her official capacity as Administrator of the CFSE, Juan Zamora Santos in his personal capacity and in his official capacity as the CFSE's Human Resources Director, and several unnamed individuals. Estrada and Zamora held those positions during the period relevant to the action.

[2] Law No. 115 of December 1991, P.R. Laws Ann. tit. 29 § 194; Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31 §§ 5141 and 5142, and sections 1, 2, 4, and 6 of Article II of the Constitution of Puerto Rico.

down in each of those instances to favor individuals affiliated with the Popular Democratic Party ("PPD").

Before the court is the CFSE's, Estrada's and Zamora's motion to dismiss under Rule 12(b)(6) of the Federal Rule of Civil Procedure 12(b)(6), which Rodríguez opposed (Docket No. 25). Defendants replied (Docket No. 46), and Rodríguez surreplied (Docket No. 55). The motion is GRANTED as to the termination claims and DENIED with respect to failure to hire claims predicated on positions referred to in the complaint. As to failure to hire for any other positions, dismissal is appropriate.

## I. STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "a plausible entitlement" to the relief requested. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007). Determining whether a complaint makes out a plausible entitlement to relief involves two steps. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 11-12 (1st Cir. 2011)(citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009)). First, the court should separate a complaint's factual allegations from any "legal conclusions couched as fact or threadbare recitals of the elements of a cause of action;" disregard the latter, Id. at 12 (quoting Iqbal, 129 S. Ct. at 1949-50) (internal quotations omitted); and treat non-conclusory factual allegations as true "even if seemingly incredible." Id. Second, the court must determine if the factual content, taken as a whole, allows "the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 129 S.Ct. at 1949). Only if it does will the complaint survive a motion to dismiss under Rule 12(b)(6). See id.

## II. FACTUAL AND PROCEDURAL BACKGROUND[3]

The case is the latest turn in a line of administrative and state court proceedings involving Rodríguez and the CFSE. According to the complaint, Rodríguez is a known member of the NPP (Docket No. 1 at ¶14). He commenced his employment at the CFSE under an NPP administration, occupying various positions of trust, including that of Director of the Legal Division of the CFSE. On May 4, 2011, the CFSE published job posting number 256-11 for the career position of Director of the CFSE's Subrogation Division. Henry Cessé Valdés and Rodríguez applied for the position (Docket No. 22-1 at p. 1; Docket No. 1 at ¶ 18). Upon a finding that Cessé failed to meet the minimum requirements, the CFSE excluded Cessé from the register of eligible candidates. And taking into account that Rodríguez met the requirements for the position, on January 17, 2012 the CFSE appointed him as Director of the Subrogation Division (Docket No. 1 at ¶ 13; Docket No. 22-3 at pp. 4 and 5).

After Rodríguez' appointment, Cessé administratively appealed the denial of his application on the grounds that the CFSE had erred in removing him from the registry of eligible candidates (Docket No. 1 at ¶¶ 18, 19, and 20). On December 27, 2012, the Board of Appeals of the CFSE held that the CFSE did not err in removing Cessé from the registry (Docket No. 1 at ¶ 20). Cessé appealed this decision to the Puerto Rico Court of Appeals ("PRCA"), Cessé Valdés v. Corporación del Fondo del Seguro del Estado, KLRA201300263 (Docket No. 1 at ¶ 21). On August 20, 2013, the PRCA concluded that Cessé did meet the minimum requirements for the

---

[3] Facts are stated as alleged in the complaint. Nevertheless, the court also takes judicial notice of the prior state administrative and judicial proceedings, as well as documents referenced in the allegations of the complaint. See Sánchez-Núñez v. Puerto Rico Elec. Power Auth., 509 F.Supp.2d 137, 143 (D.P.R. 2007) ("[A]lthough the standard of review under Fed.R.Civ.P. 12(b)(6) is generally limited to the facts stated on the face of the complaint, a court may also consider documents appended to the complaint, documents incorporated by reference, and matters of which judicial notice can be taken." citing Allen v. WestPoint–Pepperell, Inc., 945 F.2d 40, 44 (2nd Cir.1991); Kramer v. Time Warner, 937 F.2d 767 (2nd Cir.1991)). See also Mojica-Ocasio v. Sea Land Servs., 1997 U.S. Dist. LEXIS 16423, *5 ("Therefore, pursuant to Rule 201 of the Federal Rules of Evidence, this Court is in a position to take judicial notice of the facts adjudicated before the [CFSE], the Industrial Commission of Puerto Rico, the Appellate Court of Puerto Rico, and the Supreme Court of Puerto Rico").

position to which he applied, reversed the CFSE's Board of Appeals, and ordered "the inclusion of Cessé in the Certification of Eligible Candidates for Job Posting No. 256-11 for the position of Subrogation Bureau Director" (Docket No. 22-1 at p. 6; Docket No. 1 at ¶ 22).

On September 12, 2013, the CFSE filed a motion for reconsideration, arguing that it acted correctly in excluding Cessé from the registry of eligible candidates and that the controversy was moot in light of the fact that the position in question was awarded to Rodríguez (Docket No. 58-1). The next day, Rodríguez filed a motion for relief from judgment with the PRCA, asking the court to declare its judgment null and void. To that end, he argued that he was an indispensable party in <u>Cessé Valdés</u> v. <u>Corporación del Fondo del Seguro del Estado</u> because he had a proprietary interest in the position of Director of the Subrogation Division, and he was never notified of Cessé's administrative proceedings nor of Cessé's petition for judicial review before the PRCA (Docket No. 58-5 at p. 10).

On October 2, 2013, the PRCA denied the CFSE's motion for reconsideration (Docket No. 58-4 at p. 3), and on October 11, 2013, denied Rodríguez' motion for relief from judgment, concluding that Rodríguez knew that his position as Subrogation Director was being challenged and could have intervened in Cessé's administrative and judicial proceedings, but instead chose to rest on the CFSE's defense of his interests (Docket No. 58-5 at pp. 17 and 19). On November 5, 2013, however, the CFSE filed a motion with the PRCA insisting that its order to include Cessé in the registry of eligible candidates was moot because the registry had ceased to exist when the position was awarded to Rodríguez (Docket No. 58-6). On November 18, 2013, the PRCA issued a resolution stating that:

> [the CFSE's] only option is to comply expressly with our ruling or risk being found in contempt of court. The [CFSE] must take the necessary administrative measures to make the position of Subrogation Director

> available and reopen the Roster of Eligible Candidates for said position, including both petitioner herein [Cessé] and the person who currently holds the position, if said person is interested in participating in the roster, and award the position following the corresponding administrative procedures. This is the only way to comply with our Judgment dated August 28, 2013, which is final and binding at this time.

(Docket No. 22-2 at p. 2).

On July 18, 2014, Estrada as Administrator of the CFSE and a known PDP activist, sent Rodríguez a letter informing him that to comply with the PRCA's mandate, the CFSE was annulling his appointment and dismissing him from his position (Docket No. 1 at ¶ 24; Docket No. 22-8; Docket No. 1 at ¶ 15). Five days later, she informed Rodríguez by letter that the CFSE was suspending the dismissal because on "July 22, 2014, the PRCA annulled [the] … mandate issued on April 15, 2014, in [Cessé Valdés v. Corporación del Fondo del Seguro del Estado]" (Docket No. 22-9), and that the dismissal would remain suspended until the PRCA's original decision became final and binding. Id. For the time being, Rodríguez remained in the position of Director of the Subrogation Division, and in early 2015, he was elected to the CFSE Board of Appeals as representative of the Federation of Management Employees of the CFSE (Docket No. 1 at ¶ 16).[4]

On July 24, 2015, Estrada notified Rodríguez of her intention to declare his appointment null and void and to separate him from employment (Docket No. 1 at ¶ 26). Rodríguez timely requested and attended an informal hearing, which was held on September 11, 2015 (Docket No. 1 at ¶ 27). His employment with the CFSE was ultimately terminated on October 9, 2015, when Estrada issued a letter notifying Rodríguez that he was being terminated to comply with the

---

[4] He completed for this position against a well known member of the PDP, attorney Peter Serrano.

PRCA's decision in Cessé Valdés v. Corporación del Fondo del Seguro del Estado, which had become "final and binding" (Docket No. 1 at ¶ 29; Docket No. 22-7 at p. 2).[5]

On October 13, 2015, Rodríguez filed suit in the Puerto Rico Court of First Instance ("CFI") , alleging that the CFSE intended to dismiss him from his career position on account of his political beliefs in violation of his constitutional rights and without due process (Docket No. 22-3 at p. 1).[6] On October 20, 2015, the CFSE moved to dismiss, and on November 13, 2015, the CFI ruled that "as a matter of fact and of law, [Rodríguez] cannot claim a proprietary interest in the position of Subrogation Bureau Director, in accordance with the facts of the case" (Docket No. 22-3 at p. 10). So it dismissed the case without prejudice.

Rodríguez appealed to the PRCA and the CFSE's Board of Appeals, and from December 3, 2015 to April 26, 2016, submitted applications for several job openings within the CFSE, including: (1) five positions as Attorney I in the appeals area; (2) the career position of Director of Adjudications; (3) the career position of Appeals Director; and (4) the position of Legal Counsel in the area of Collections and Attachments.[7] He was included in the registry of eligible candidates for the positions of Attorney I, the Director of Adjudications, and Appeals Director but was not appointed to any of the positions for which he applied. Although he has more than 25 years of experience as an attorney, prior experience as Director of the CFSE Legal Division, Director of the Subrogation Division, and 23 years of experience in matters related to appeals before the Industrial Commission, Estrada appointed individuals with substantially less experience and less

---

[5] Rodríguez has neither alleged nor argued or presented evidence that the judgment in Cessé Valdés v. Corporación del Fondo del Seguro del Estado was not final and binding as of October 9, 2015.

[6] Although Estrada's letter was issued before Rodríguez filed suit in the CFI, Rodríguez was not given notice of the letter until October 22, 2015. See CFIS's Judgment (Docket No. 22-3 at p. 7). Subsequently he requested from the CFI authorization to file an amended complaint reflecting the fact that he received a letter declaring his appointment null and void.

[7] The complaint titles this position Legal Counsel in the CFSE area of Collections and "Embargo." The word "Embargo" has been translated to "Attachments" (translation ours).

years in the profession than Rodríguez to the positions of Attorney I (Docket No. 1 at ¶¶ 46 and 57).[8]

As to the positions of Director of Adjudications and Appeals Director, Estrada appointed co-defendant Zamora and Wendy Lind Casado, respectively. Before appointing Zamora and Lind, she eliminated prior requirements that the appointed individual for each position be admitted to practice law before the United States District court for the District of Puerto Rico and have experience supervising attorneys. Zamora and Lind, members of the PDP, like Estrada, would not have met these requirements (Docket No. 1 at ¶¶ 41 and 49). Furthermore, Lind, who was the only person besides Rodríguez on the registry of eligible candidates for Appeals Director, had been previously suspended from practicing law by the Puerto Rico Supreme Court for not responding to orders of the court and had no prior experience supervising attorneys, nor had she ever litigated before the Industrial Commission, where all of the persons under the supervision of the Appeals Director litigate (Docket No. 1 at ¶ 50).

With respect to the position of Legal Counsel in the area of Collections and Attachments, Estrada appointed Javier Torres Espino. After his appointment, Torres, who at the time had less than two years of experience as an attorney, earned a monthly salary in excess of $9,000.00, more than the Director of Collections and Attachments of the CFSE. As of August 3, 2016, the date of the complaint here, the CFSE had yet to fill Rodríguez' former position of Director of the Subrogation Division.[9] On August 18, 2016, the CFSE's Board of Appeals granted the CFSE's

---

[8] The position of Attorney I in the appeals area of the CFSE handles appeals before the Industrial Commission.

[9] In the motion to dismiss, defendants state that in August 2016, the CFSE opened a job vacancy announcement for the position of Director of the Subrogation Division; applications were accepted, Rodríguez and Cessé both applied for the position, and on September 8, 2016, Rodríguez was appointed to the position, one which he currently holds (Docket No. 11 at pp. 14-15). Although they cite to exhibits in support of this proposition, defendants ask the court to consider facts not alleged in the complaint, nor included in documents referenced in the complaint, nor matters of which the court can take judicial notice. Accordingly, the putative fact that Rodríguez currently holds the position which is the source of this controversy has been disregarded for purposes of evaluating this motion to dismiss.

motion to dismiss Rodríguez' appeal (Docket No. 22-4 at p. 4), and on August 26, 2016, the PRCA affirmed the CFI's decision to dismiss Rodríguez' case (Docket No. 22-5).

### III. DISCUSSION

**A. Due Process**

Rodríguez alleges to have been terminated as Director of the Subrogation Division without due process of law (Docket No. 1 at ¶¶ 3, 22, 24, 35-37, 67, 71-73). Under the Fourteenth Amendment, a public employee with a property interest in continued employment cannot be discharged without due process of law. González-De-Blasini v. Family Dep't, 377 F.3d 81, 86 (1st Cir. 2004)(internal citations omitted). The Constitution does not create property interests; they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. Id. To establish a constitutionally protected property interest, a plaintiff must demonstrate that he has a legally recognized expectation that he will retain his position. Id.

Rodríguez contends that he had a constitutionally protected property interest in the position (Docket No. 1 at ¶¶ 2, 28, 35-38, 71). Defendants counter that there was no such interest because the procedure by which Rodríguez was appointed violated Puerto Rico law (Docket No. 11 at pp. 22-24). Moreover, they state that collateral estoppel bars Rodríguez from relitigating the validity of the procedure that led to his appointment because that issue was adjudicated by the PRCA and the CFI (Docket No. 11 at p. 3). Regardless of whether collateral estoppel is applicable, the due process claim fails, for at the time of the events at issue Rodríguez lacked a constitutionally protected property interest in the position.[10]

---

[10] The court offers no view on whether at present, Rodríguez has a property interest in the position.

Under Puerto Rico, law, career employees have a property interest in their continued employment. Figueroa-Serrano v. Ramos-Alverio, 221 F.3d 1, 6 (1st Cir.2000); Kauffman v. P.R. Tel. Co., 841 F.2d 1169, 1173 (1st Cir.1988). However, public employees hired for career positions in violation of the Puerto Rico Personnel Act, or agency regulations promulgated thereunder, may not claim property rights to continued expectations of employment because their career appointments are null and void ab initio. De Feliciano v. De Jesús, 873 F.2d 447, 452-455 (1st Cir.1989); Kauffman, 841 F.2d at 1173.

Here, the PRCA determined that the CFSE had acted contrary to the "Merit Principle" and its own regulations regarding recruitment and selection of employees when it excluded Cessé from the registry of eligible candidates for the position of Director of the Subrogation Division. See Docket No. 22-1 at pp. 3,4, and 6 (citing Regulation No. 6226 of November 6, 200, State Insurance Fund Corporation Managerial Employees Personnel Regulations). Moreover, it ordered the CFSE to "take the necessary administrative measures to make the position of Subrogation Director available and reopen the Roster of Eligible Candidates."[11]

Rodríguez argues the PRCA merely pronounced that the CFSE erred in excluding another employee from consideration and therefore did not proclaim his appointment invalid. Even though the decision in Cessé Valdés v. Corporación del Fondo del Seguro del Estado does not refer to Rodríguez, it implicates the selection procedure that led to his appointment. And the subsequent order to make the "Subrogation Director" position available and reopen the roster of candidates confirms the nullity of Rodríguez' appointment. By extension, the due process claim must be dismissed.

---

[11] While the parties disagree over the legal implications of these conclusions and orders, their substance is not in dispute.

**B. Political Discrimination**

Rodríguez claims that the CFSE, Estrada, and Zamora terminated him from his career position as Director of the Subrogation Division and then denied his applications for several open positions with the CFSE on account of his political affiliation (Docket No. 1 at ¶ 72-74). The First Amendment prohibits government officials from taking adverse employment action against a non-policy making government employee due to the employee's political affiliation. Welch v. Ciampa, 542 F.3d 927, 938 (1st Cir. 2008). To make out a *prima facie* case of political discrimination, plaintiff must show that: (1) plaintiff and defendant have opposing political affiliations; (2) defendant was aware of plaintiff's affiliation; (3) an adverse employment action occurred; and (4) political affiliation was a substantial or motivating factor for the adverse action. Reyes-Orta v. Puerto Rico Highway and Transp. Authority, ---F.3d----, 2016 WL 285742, *4 (1st Cir. 2016); Torres-Santiago v. Municipality of Adjuntas, 693 F.3d 230, 236 (1st Cir. 2012).

A defendant may rebut a plaintiff's *prima facie* showing what is commonly referred to as the Mt. Healthy defense, proving by a preponderance of the evidence that the governmental agency would have taken the same action regardless of plaintiff's political affiliation. Reyes-Pérez v. State Ins. Fund Corp., 755 F.3d 49, 54 (1st Cir. 2014)(citing Díaz-Bigio v. Santini, 652 F.3d 45, 52 (1st Cir. 2011)). While it is not necessary to plead facts sufficient to establish a *prima facie* case at the pleading stage, the elements of a *prima facie* case are part of the background against which a plausibility determination should be made. Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 54 (1st Cir. 2013). These parameters lead to different results with respect to termination and failure to hire.

### a. Termination

Rodríguez complains that he was terminated "solely on the basis of unlawful political discrimination" (Docket No. 1 at ¶ 72). But the judicial proceedings at the state level prove otherwise. As noted above, the CFSE removed Rodríguez from his position after the PRCA ordered it to "take the necessary administrative measures to make the position of Subrogation Director available and reopen the Roster of Eligible Candidates for said position." Compliance necessarily entailed removing Rodríguez. And even if it were true that defendants had a discriminatory animus at the time the CFSE removed Rodríguez, it is inescapable they would have taken the same action because they were ordered "to make the position of Subrogation Director available" under threat of contempt.

Rodríguez points out that "[s]ince [he]… had been lawfully appointed to his position, [CFSE] personnel regulations required that the agency exhaust all the alternatives established in the regulations before terminating the plaintiff," such as transferring him or demoting him (Docket No. 25 at p. 6)(citing Section 15.3 of the CFSE personnel regulations, Docket No. 35-1 at pp. 7-10). The argument, however, relies on the mistaken premise that Rodríguez had been lawfully appointed. Yet the PRCA determined that the procedure leading to the appointment violated the merit principle and the CFSE's own internal agency regulations. As the appointment was null, the CFSE was under no obligation to exhaust alternatives to the termination. So Rodríguez has failed to plead a plausible entitlement to relief with respect to the discriminatory termination claim under the First Amendment. For the same reason, the claim must be dismissed.

### b. Failure to Hire [12]

#### i. Positions identified in the Complaint.

The complaint identifies eight positions Rodríguez unsuccessfully applied for: five positions as Attorney I in the appeals area; the position of Director of Adjudications; the position of Appeals Director; and the position of Legal Counsel in the area of Collections and Attachments (Docket No. 40 at ¶¶ 40, 45, 48, 54). The PRCA's judgment does not necessarily explain Estrada's and the CFSE's subsequent decision not to hire Rodríguez for those positions. Moreover, the pleadings are sufficient to satisfy the *prima facie* framework.

To this end, Rodríguez states that he was a member of the NPP while Estrada, who at all relevant times was administrator of the CFSE, belonged to the PDP; and that Estrada was "well aware of the plaintiff's political affiliation with the NPP" (Docket No. 1 at ¶ 15).[13] In like manner, adverse employment actions occurred when Rodríguez was allegedly not selected to the positions for which he applied,[14] and a holistic reading of the complaint supports a reasonable inference that Rodríguez' political affiliation was a motivating factor in the decision to not hire him to those positions.[15]

---

[12] The complaint is somewhat unclear as to whether failure to hire claims are brought against Zamora. While most of the allegations pertaining to Rodríguez' failure to hire claims concern actions taken by the CFSE and Estrada, the complaint does state that "at all times relevant" Zamora was the Director of Human Resources at the CFSE (Docket No. 1 at ¶ 11), and that he acted in concert with Estrada to change the requirements for the Director of Adjudications position so that it could be awarded to him. Additionally, it expresses that "[a]fter the plaintiff's employment was unlawfully terminated, the defendants, particularly Estrada Figueroa and Zamora Santos, continued with a pattern of politically discriminatory practices against the plaintiff to prevent him from obtaining employment in another position within the CFSE, in violation of his First Amendment rights" (Docket No. 1 ¶ 39). As such, the failure to hire claims against Zamora with respect to the jobs specified in the complaint will remain at this juncture.

[13] Although in the context of a 12(b)(6) motion this allegation seems borderline, the court gives Rodríguez the benefit of the doubt and will retake the issue in addressing the pending motion for summary judgment.

[14] See Rutan v. Republican Party of Illinois, 497 U.S. 62, 79, 110 S.Ct. 2729, 2739, 111 L.Ed. 2d 52 (1990)(holding that a government entity may not base hiring decisions for non-policymaking positions on party affiliation and support); Morales-Tañon v. Puerto Rico Elec. Power Auth., 524 F.3d 15, 19 (1st Cir. 2008)(noting in dicta that a government entity's refusal to hire an employee constitutes an adverse employment action for the purposes of a Section 1983 political discrimination claim).

[15] This is particularly so considering the allegations that Rodríguez had substantially more experience than the individuals selected to one of the five Attorney I positions or the position of Legal Counsel in the area of Collections and Attachments, and that in

Estrada and Zamora maintain they are entitled to qualified immunity (Docket No. 16). In general, qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. See, Mihos v. Swift, 358 F.3d 91, 101-02 (1st Cir. 2004)(citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). For a plaintiff to overcome a qualified immunity defense, he must show that his allegations, if true, establish a constitutional violation; that the right was clearly established; and that a reasonable official would have known that his actions violated the constitutional right at issue. Mihos, 358 F.3d at 98-99 (citing Suboh v. District Attorney's Office of Suffolk Dist., 298 F.3d 81, 90 (1st Cir.2002)).

On this formulation the qualified immunity defense fails because Rodríguez' allegations, if true, show that Estrada and Zamora violated his First Amendment rights by refusing to hire him to several positions to which he applied on account of his political affiliation. The right to be free from political discrimination in the hiring process for career positions was clearly established at the time of the alleged violation. See Rutan, 497 U.S. at 79. And thus, a reasonable official would have known that refusing to hire an applicant to a non-policy making position due to his political beliefs violates the First Amendment. Consequently, the failure to hire claims predicated on the positions referred to in the complaint survive dismissal.

---

connection with the positions of Appeals Director and Director of Adjudications, Estrada changed the qualifying requirements to accommodate individuals of her own political party. Nevertheless, the issue will be revisited in light of the record presented to evaluate the pending motion for summary judgment.

### ii. Positions not identified in the Complaint.

In the Sur-reply, Rodríguez explains that he suffered political discrimination when not selected to *thirteen* CFSE positions (Docket No. 55 at pp. 8-9).[16] It is well settled, however, that a plaintiff cannot add new claims to his complaint in an opposition to a motion to dismiss. See Ault v. Medina Med. Inv'rs, LLC, 2007 WL 81853, at *3 (N.D. Ohio Jan. 8, 2007); Williams v. United States, 2017 WL 2275564, at *2 (S.D. Ohio May 5, 2017), report and recommendation adopted, 2017 WL 2265591 (S.D. Ohio May 24, 2017).

Rodríguez did not amend the complaint to include allegations that he applied to positions other than those referred to in the complaint, nor requested leave to do so. The deadline to amend the complaint as a matter of course has passed, see Federal Rule of Civil Procedure 15(a), and he should have known from the outset of this case about all of the CFSE positions to which he unsuccessfully applied. In consequence, dismissal is appropriate as to failure to hire claims based on positions not identified in the complaint.

### C. Retaliation

Rodríguez reasons that his termination was an act of retaliation in violation of Law 115, because he issued several dissenting opinions after becoming a member of the CFSE Board of Appeals in 2015 where he allegedly "lambast[ed] personnel transactions executed and approved by the defendants, particularly defendant Estrada Figueroa . . . ." (Docket No. 1 at ¶ 100). Law 115 makes it unlawful for the employer to discharge, threaten or discriminate against an employee regarding the terms, conditions, compensation, location, benefits or privileges of employment should the employee offer or attempt to offer any testimony, expression or information before a legislative, administrative or judicial forum in Puerto Rico. See, P.R. Laws Ann. tit. 29 § 194(a).

---

[16] As noted earlier, the complaint refers to eight positions.

To establish a *prima facie* case of retaliation under Law 115, the employee must show: (1) participation in activity protected by §§ 194(a), et seq.; (2) a materially adverse employment action; and (3) a causal connection between the protected activity and the adverse action. See, Santana-Colón v. Houghton Mifflin, 81 F.Supp.3d 129, 136 (D.P.R. 2014)(so recognizing). If the complainant establishes such a case, the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the adverse employment action. Id. Should the employer do so, the employee must demonstrate that the employer's alleged reason was a mere pretext for the challenged action. See, Rivera-Figueroa v. Autoridad de Acueductos y Alcantarillados, 177 D.P.R. 345, 362 (2009)(describing shifting burdens).

Protected activity consists of "offer[ing] or attempt[ing] to offer, verbally or in writing, any testimony, expression or information before a legislative, administrative or judicial forum in Puerto Rico, when such expressions are not of a defamatory character nor constitute disclosure of privileged information established by law." P.R. Laws Ann. tit. 29 § 194a. While not testimony, dissenting opinions fit within the terms "expression" or "information." But in subscribing the opinions Rodríguez was not offering or attempting to offer any expression or information *before* a covered forum. Rather, he offered dissenting opinions as a member of the forum itself. The text of the statute suggests that its purpose is to protect employees who assist in investigations before legislative, administrative, or judicial forums instead of shielding a dissenting member of the forum as such. Compare with Rivera-Figueroa v. Autoridad de Acueductos y Alcantarillados de Puerto Rico, 177 D.P.R. 345, 367-368 (2009)(providing information to regulatory agency and court-appointed monitor during course of employment considered protected activity under Law 115). Accordingly, Rodríguez' retaliation claim must be dismissed.

### D. Articles 1802 and 1803, and the Puerto Rico Constitution

Rodríguez invokes violations of the "the pertinent provisions of the Commonwealth's Constitution and Articles 1802 and 1803 of the Puerto Rico Civil Code," based on the same factual circumstances underlying his due process, political discrimination, and retaliation claims (Docket No. 1 at p. 25). Given that the due process and political discrimination claims related to his termination will be dismissed, the court will decline to exercise supplemental jurisdiction over parallel claims under local law. In that regard, they will be dismissed without prejudice. To the extent the failure to hire claims remain as to the eight positions articulated in the complaint, so too any parallel claims under local law.

### IV. CONCLUSION

In view of the foregoing, the pending motion to dismiss (Docket No. 11) is GRANTED IN PART and DENIED IN PART. Rodríguez' political discrimination claim based on his termination, as well as his due process and retaliation claims, are DISMISSED. The request to dismiss the political discrimination claims against the CFSE, Estrada and Zamora for failing to hire Rodríguez to the eight positions specified in the complaint is DENIED. Any claims regarding political discrimination for failure to hire in connection with positions other than those specified in the complaint are DISMISSED.[17]

**SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of September, 2017.

                                                              s/Pedro A. Delgado Hernández
                                                              PEDRO A. DELGADO HERNÁNDEZ
                                                              United States District Judge

---

[17] Claims under Puerto Rico statutes or the Puerto Rico Constitution that are parallel to the federal political discrimination and due process claims that have been dismissed are likewise dismissed, without prejudice.